No. 2478.

STEVE TAYLOR *v.* THE STATE.

1. RAPE—AGGRAVATED ASSAULT AND BATTERY—CHARGE OF THE COURT.—
The first count in the indictment in this case charged a rape upon a female over the age of ten years, and the second count charged a rape upon a female under the age of ten years.    Under preponderating proof of consent and non-penetration, but conflicting proof as to the age of the female, the trial court charged the jury as follows: "But if you believe from the evidence that there was not such penetration; but that defendant made an assault upon Hattie Gray, not with intent to commit rape upon her, but with intent to have sexual intercourse with her, with her consent, then you will find the defendant guilty of an aggravated assault," etc.    *Held*, abstractly correct, but, in view of the evidence, erroneous in that it did not direct an acquittal if the jury believed from the evidence that the female consented to the sexual act, and was over the age of ten years.

2. SAME.—Upon the issues of rape and consent the trial court charged the jury as follows: "If you believe from the evidence that the defendant did, as charged, have carnal knowledge of the said Hattie Gray, but

have a reasonable doubt whether such carnal knowledge was ob-
tained with her consent, the defendant should be acquitted unless you
believe beyond a reasonable doubt that Hattie Gray was under ten years
of age; in which event consent makes no difference.". *Held*, that the
charge, in view of the evidence which clearly disproved carnal knowl-
edge, was erroneous because it rested the defendant's right to acquittal
upon a hypothesis eliminated by the proof.

3. SAME—ASSAULT.—The charge is otherwise erroneous in that, under the
proof, it failed to instruct the jury in substance, that defendant should
be acquitted of assault to rape or aggravated assault if the female was
not under the age of ten years and consented to the act of the defend-
ant.

APPEAL from the District Court or Kaufman. Tried below
before the Hon. Anson Rainey.

The conviction in this case was for an aggravated assault, and
the penalty assessed was a fine of five hundred dollars. It was
had under an indictment which charged the appellant with the
rape of Hattie Gray.

Hattie Gray, the alleged injured party, was the first witness
for the State. She testified in substance, that on November 6,
1886, the day alleged in the indictment, she was sent by her
mother to the potato patch in Doctor W. H. Pyle's field to get
some potatoes. The potato patch was northwest from Doctor
Pyle's residence. She met the defendant in a path which
traversed the potato patch, he being at work in the patch dig-
ging potatoes. The defendant asked her to "give him some."
She refused, whereupon the defendant seized her, threw her to
the ground, got on top of her and introduced his male member
into her sexual organ. Witness not only did not consent to the
sexual act, but resisted and tried to get the defendant off of her
after he got on, and hallooed several times. The defendant's
private organ was about an inch and a half in diameter, and
anywhere from eight to twelve inches in length. He penetrated
her private organ to the depth of about an inch and a half. De-
fendant at first offered to give witness some wax if she would
consent to the sexual act. She refused, and defendant forced
her in the manner stated.

Cross examined the witness said that defendant, while on her,
held her hands with one of his hands, and with his other hand held
his sexual organ. Witness saw Hill Wilkins when he passed
through the potato patch about ten steps from the place of the
outrage. He passed while defendant was on top of witness, and

witness, at that very time, was hallooing. When defendant
released witness, she buttoned her drawers, got her potatoes
and took them home to her mother. She did not report the out-
rage to her mother immediately, but did so about bed time on
that night. Witness did not know her present age, nor how old
she was when she was outraged by the defendant.

Hill Wilkins testified, for the State, that in the evening, on or
about the day alleged in the indictment, he had occasion to pass
through Doctor Pyle's field. When he reached the potato patch
he discovered a man and girl on the ground in the act of sexual
intercourse. Witness did not recognize the parties at first, and
stopped and looked at them for full ten minutes. He then
started to pass on, when the parties discovered him and got up,
and witness recognized the defendant and Hattie Gray. Hattie
got her potatoes and started home at once. She did not halloo
while witness saw her under defendant, but twice said: "Don't
do that; do quit." Upon recognizing defendant, witness said to
him: "Steve, what does this mean? I would be ashamed to
have such doings with a little girl like that." Defendant re-
plied: "It is nothing but a poor farm scrape. I will fix it up
with her so that nothing will ever be said about it, and it won't
get out." Defendant then went to Hattie and said something
to her which the witness did not hear. On his return witness
said to him: "You ought to be ashamed of yourself; and you
ought to be in the penitentiary." The defendant replied that he
was ashamed, himself, of his conduct, but that he did not force
the girl; that she came to the patch and he told her that he
would give her some wax to submit to him; that she agreed, and
they proceeded with the act. Witness could not say how long
exactly he stood and watched the carnal act, but between ten
and twenty minutes.

On his cross examination the witness stated that the act of
copulation between defendant and Hattie Gray occurred about
an hour before sun down on Saturday, about the time in the
month of November, 1886, alleged in the indictment. Before
leaving defendant, witness told him that he would see that the
law handled him for his conduct with the girl. Witness met old
"Aunt Charlotte" at church on the next day and reported the mat-
ter to her. He did not see Hattie's mother until the Monday fol-
lowing the act, when he told her. Witness saw Hattie at Sunday
school on the day after her experience with defendant. He did not
see Hattie button up her drawers when defendant got off her. Wit-

ness's reason for watching the parties in *flagrante delicto* was that, astounded to find anybody in Kaufman county capable of the act described, he determined to ascertain who the parties were by waiting until they got through. When Hattie Gray went away from the patch she did not walk like she was in pain or had been hurt by the operation, but walked off rapidly. She did not weep, nor did she halloo at any time while witness was present.

Fannie Gray testified, for the State, that she was the mother of Hattie Gray, the alleged injured female. She sent Hattie to the patch on the evening of Saturday, November 6, 1886, to get some potatoes. Hattie brought the potatoes home, but did not tell the witness anything about the outrage upon her. Witness first heard of it at Sunday school on the next day. Hattie was not ten years old at the time of the rape, nor at the time of this trial. Witness could not remember the year of her birth, but knew that she was born on Mr. C. C. Nash's place, during the summer preceding Mr. C. C. Nash's death.

Cross examined, the witness said that Hattie was chewing gum when she got home with the potatoes, and she told the witness that she got the gum from defendant. She said nothing to witness about the outrage upon her until after the witness's return, on the next day from Sunday school, where she met Aunt Charlotte, who told her what she heard from Hill Wilkins. Witness thereupon spoke to Hattie about the matter, and Hattie said that she did not tell witness because she was afraid witness would whip her. Hattie did not, on her return from the patch, walk like she had been hurt or was in pain. She went to Sunday school on the next day. Witness afterwards washed Hattie's underclothes and drawers, but found no blood or indications of blood on any of them. Hattie never suffered in any manner from the effects of the alleged outrage.

Doctor Mathewson testified, for the State, that in his opinion Hattie Gray, the alleged outraged female, was ten or twelve years old. It was possible that a girl of her age could be raped, but improbable that penetration by rape could take place. Judging from the size and development of the girl, and the physical stature of the defendant, and the diameter and attenuated length of his private organ as described by the girl, the witness would say that defendant did not succeed in penetrating the sexual organ of the girl. The vestibule of the privates of a girl of the age and physical development of Hattie ranged in size from that

of a nickel to a twenty-five cent piece. Penetration of such an organ by such an organ as that which, under the evidence, pertained to the defendant, would inevitably produce laceration of the female parts, subsequent hemorrhage and a culminating soreness of the parts too severe to permit walking by the injured party. Had penetration of Hattie's organ been accomplished on Saturday, under the circumstances detailed by her, she could not have attended Sunday school on the next day. By penetration, the witness meant the passage of the penis into the vaginal canal, which he considered impossible in this case without succeeding hemorrhage from Hattie's parts. The penis of the defendant might possibly pass through the *labia majora* of Hattie's organ without producing hemorrhage. Doctor Lindsey, the next witness for the State, testified substantially as did Doctor Mathewson, and the State closed.

Doctor W. A. Mulkey testified, for the defense, that he had been a practicing physician and surgeon for thirty years. He stated that the sexual organ of a girl of the size and development of Hattie Gray, as a general rule, never exceeded the diameter of a nickel. The witness had never, in the course of his thirty years of practice, seen one so large in diameter as a twenty-five cent piece. The organ of a girl of the size and development of Hattie Gray could not be penetrated by the organ of a boy just arrived at the age of puberty, without producing laceration, hemorrhage and soreness. If Hattie's organ had been penetrated by the organ of the defendant, as described by her, intense laceration, hemorrhage and soreness of her parts would have resulted, and she could not have gone to Sunday school on the next day, nor have left her room for several days. Consent of the female to the sexual act imparts expansion to her parts, whereas resistance or unwillingness will produce contraction of the parts. The witness was positive that the vaginal canal of Hattie's sexual organ could not be penetrated by the penis of the defendant without laceration, hemorrhage and soreness resulting. Nor could the *labia minora* have been penetrated without such results, although the *labia majora* might possibly have been entered without the consequences named ensuing.

Doctor W. H. Pyle testified, for the defense, substantially as did Doctor Mulkey.

The defense closed.

The State, in rebuttal, introduced Charley Nash as a witness.

He testified that he was not positive as to the year of the death of his father, C. C. Nash, but he thought that he died in 1878.

On his cross examination, this witness stated that, according to the best of his recollection, the girl Hattie Gray was born on his father's place during the visit of his father to Lampasas springs, which was in the summer of 1875. Hattie, to the best of witness's recollection, was two or three years old, and was running about, at the time of the death of the witness's father.

*Woods & Cunningham*, for appellant.

*W. L. Davidson*, Assistant Attorney General, for the State.

Hurt, Judge. Under an indictment for rape appellant was convicted of an aggravated assault and battery. The indictment contained two counts, the one alleging the female to have been under the age of ten years, the other that she was over that age.

There was serious conflict in the testimony as to whether the female was under or over the age of ten years at the time of the alleged rape. If under ten, we can not comprehend, under the facts, upon what ground such a verdict was returned. How it was possible to reduce the offense below an assault to rape, we never expect to understand. On the other hand, if the girl was over ten years of age, the facts strongly showing that she yielded her consent, appellant was guilty of no offense.

The learned judge charged the jury upon the subject of aggravated assault as follows: "But if you believe from the evidence that there was not such penetration, but that defendant made an assault upon the person of Hattie Gray, not with intent to commit rape upon her, but with intent to have sexual intercourse with her, with her consent, then you will find defendant guilty of an aggravated assault," etc.

This charge is abstractly correct, but, when considered with reference to the facts, it was calculated to mislead the jury. If the girl was over ten years of age, and consented, there was no assault of any kind. If she did not consent, and defendant did not intend to rape her, but intended to have carnal intercourse with her, then there was an aggravated assault. This last view of the case was presented to the jury by the above charge, but the first phase was not, in any part of the charge.

It is shown by a large preponderance of the testimony that the girl consented; and, if over ten years, defendant should not have

been convicted of any grade of offense, and the jury should have been instructed that, if they believed the girl was over ten, and consented to what was done by defendant, they should acquit.

It is true that the learned judge gave this charge, which follows the above: "If you believe from the evidence that the defendant did, as charged, have carnal knowledge of the said Hattie Gray, but have a reasonable doubt whether such carnal knowledge was obtained with her consent, the defendant should be acquitted, unless you believe beyond a reasonable doubt that Hattie Gray was under ten years of age, in which event consent makes no difference."

In this charge the jury can acquit if they believe defendant had carnal knowledge by consent of the girl, provided she was not under ten years of age. The proof clearly negatived carnal knowledge; hence the hypothesis upon which acquittal could rest is eliminated. Again, there is no allusion whatever to an assault. The jury are in no part of the charge told that defendant should be acquitted of assault to rape, or aggravated assault, if the girl was not under ten years of age, and consented to the act of defendant.

The proof in the record cogently tends to establish these facts, and it was of the first importance to the defendant to have this proposition submitted to the jury. We are of opinion that if the jury had been thus instructed, under the facts of this case, a different verdict would have been returned.

For the omission in the charge, the judgment is reversed and the cause remanded.

*Reversed and remanded.*